The opinion of the court was delivered by
Huston, J.,
(after stating the two points before mentioned.)— The cause must eventually turn on these points, and in discussing them, I shall notice some matters discussed in the argument, intimately connected with, if not depending, on how these two were decided.
The rule that what is once a mortgage, shall always be considered a mortgage, though stated as a general rule, will perhaps be found subject to several exceptions. Length of time, together with the subsequent conduct of the parties,' have often varied it — but I believe it is never varied by clauses inserted in the writings at the time of the loan of money. The needy borrower is not considered as treating on equal terms with the lender — hence the lender may stipulate for the pre-emption if the borrower sells, yet he has not been permitted, at the time of the loan, to stipulate that he shall in a certain event become the purchaser at a price then agreed on. The whole power of the court is founded on the idea that a needy man requires protection against the effect of his own agreements with one who having the power to relieve him from present distress, was found too often to grant such relief on unconscionable terms. A common mortgage is as plain and express an agreement for an absolute sale in case the money is not paid on the day as can be expressed. Yet it has long ceased to be any thing else than a security for money. And it would be an imputation on the administration of justice, if the same agreement differently expressed by the scrivener, though not more plainly, should have a contrary effect. If then the transaction was really a loan of money, secured on (and, it is nothing more, whatever language may be used in expressing the contrae*, or whether that contract is all contained in one instrument, or divided among several. And as in a plain express mortgage, the right of redemption is a right inseparable from the estate of the mortgagor, it is equally an essential right it* him, though the igreement be expressed in a more complicated form and manner The right of redemption cannot be destroyed or taken away, and of consequence cannof be restrained or fettered — for if it could, it would soon cease to exist. If this be a mortgage then, the attempt to confine the right of redemption to the mortgagor personally, as being a restraint on that right) would he void — it would in most instances he equivalent to denying the *366 right altogether — it tends to disable him to borrow, and restrains his right of raising the money by sale; in short, in almost all cases, it renders the right of redemption worth nothing.
Was this a mortgage? On this it seems to be impossible to doubt —it was a loan of money — it might be repaid in a day certain— but says the agreement, if not paid then, the mortgagee may pay or must pay four hundred dollars, and other four hundred dollars, and become purchaser. The mortgagee himself knows it to be only a mortgage, and treats it as such by purchasing the equity of redemption. If that had been done before the mortgagor had sold to Gray — if the eight hundred dollars agreed upon at the time of the loan, and the eight hundred dollars agreed to be given for the equity of redemption had been paid, and a long time had been suffered to elapse, I do not say what a court would have decided —that case is not before us.
If this be considered a conditional sale, in what respect would the situation of Johnston be better? the condition was performed to the letter, and in its spirit; the four hundred dollars lent was rendered before the 1st of April, 1815, and on that day. I do not rely solely on the phrase that M‘Kellip should pay or cause to be paid, though if necessary, they might be relied on. There did exist in M'Kellip a right of redemption — that was not taken away merely by striking out the word assigns; and an express covenant not to raise the money by sale, extorted by a lender from a borrower, would not have availed.
Other objections are made, that Gray did not state whether he made the tender in 1S14, and that on the 1st of April, 1815, as the agent of M‘Kellip, or in his own right as purchaser. It would be strange that a tender made by a man who had good right to make it, should be considered bad because he was not asked, and did not state in what capacity he acted — as a purchaser whose title was on record,, he had a right to tender and redeem — and as he did not pretend to act in any other capacity, the tender is good. It was alleged as error, that the judge told the jury, that on the face of the writings it was a mortgage; and that the parol evidence, if believed by them, also made it a mortgage — and this is called taking the facts from the jury. I should not have noticed this, if the same objection had not been made in several other cases at this term. There was no contradictory statement in the testimony; and the court was bound to give an opinion on the effect of it. The objection seems to be, that the judge ought to have repeated every sentence of it, and concluded each sentence, “ If you believe this sentence, it is a mortgage.” If he had done so, it would have been novel, and, like most novelties, wrong! There may be cases where several acts are necessary to entitle a party, and where his right does not arise until he'has performed each of those acts; and in such case, a judge must so direct a jury. There are other cases where the state of a single fact is to be collected from testimony— *367 if that testimony is variant, the jury will be told the law, as it would be if the facts, found in one way, and as it would be if the facts are found to be otherwise. When the evidence is all consistent, and express as to the facts, the only direction can be what was given here.
From the entry of the amicable action, it would seem the intention was to ascertain who had a right to the money in the sheriff’s hands — but the issue is confined to the point, whether Johnston had right to the whole of it. He claimed to be purchaser, and as such, claimed the whole. His' right to the four hundred dollars originally advanced by him, and interest up to the 1st of Jlpril, 1815, is not only admitted, but it has been actually paid him, and received without prejudice to-this suit. We have been asked to give an opinion, as to who is entitled to this money — this to prevent further litigation — on the facts before us, and if no other facts exist, Johnston is entitled to the four hundred dollars advanced in 1813, and interest.
And on the facts in evidence, and if no contradictory facts exist, he is not entitled to receive out of the money in the sheriff’s hands the four hundred dollars he paid M‘Kellip on the 20th February, 1815. He had legal notice on the 2d of March, 1S14, that M'Kellip had sold to Gray — and actual notice in the autumn of 1814, by the tender made by Gray. His payment to M'Kellip after-wards, if not, under all the circumstances, fraud, was at least folly. He could'not interfere with or embarrass the contract between M'Kettip and Gray, or acquire any further lien on the land by giving M'Kellip money, which he knew M‘Kellip had no right to receive.
As to the residue of the money in the sheriff’s hands, we have no facts on which to give an opinion, and we give none. M'Kellip is not before us — how he and Gray stand, or what at this time are the respective rights of M'Kellip and Gray, we know not.
The charge of the judge being correct on all the facts of the case, and the verdict conformable to the law and evidence, the motion for a new trial is overruled, and judgment affirmed.
Judgment affirmed.